IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEROD ANTONIO HARRISON, | No. C 12-0963 YGR (PR) |
| Plaintiff, | **ORDER GRANTING, IN PART, DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR EXTENSION OF TIME TO AMEND COMPLAINT AND TO FILE OPPOSITION** |
| v. | |
| A. HEDGPETH, et al., | |
| Defendants. | |
| _____/ | (Docket Nos. 39, 56 and 77) |

**INTRODUCTION**

Plaintiff, an inmate at Salinas Valley State Prison ("SVSP"), filed this *pro se* civil rights action under 42 U.S.C. § 1983 claiming that Correctional Officers D. Murphy, M. Perez and V. Logan used excessive force by releasing pepper spray into his cell; that Correctional Officers J. Vasquez, R. Ambriz, C. Tschabold, A. Vasquez and Sergeant A. Meza observed this use of force and failed to intervene; that Correctional Officers D. Murphy and J. Vasquez, used excessive physical force in escorting him from his cell; that Correctional Officers Ambriz, A. Vasquez, M. Perez, V. Logan and Sgt. A. Meza observed this second use of force and failed to intervene; that supervisors Lt. Krenke, Sgt. Meza and Warden A. Hedgpeth failed properly to train and supervise Defendants; and that Licensed Vocational Nurses B. O'Kelly and J. Rodriguez failed to treat Plaintiff for his injuries.[1] In two separate motions, Defendants move for summary judgment on the excessive force and failure to intervene claims and have served Plaintiff with the warning about summary judgment motions required by *Rand v. Rowland*, 154 F.3d 952, 953-954 (9th Cir. 1998) (en banc).[2] Plaintiff filed oppositions to both motions and

---

[1] All claims against Defendants Krenke and Hedgpeth have been dismissed with prejudice pursuant to a stipulation between the parties. *See* Doc. No. 38.

[2] Defendants O'Kelly and Rodriguez were served on October 25, 2013 and their dispositive motion is due on December 23, 2013.

1 Defendants filed replies.  Plaintiff moves for a sixty-day extension of time to file a proposed

2 amended complaint and to file another opposition, which Defendants have opposed.  For the

3 reasons discussed below, the motion for summary judgment on the claims based on releasing

4 pepper spray is **GRANTED,** the motion for summary judgment on the claims based on physical

5 excessive force is **GRANTED IN PART** and the motion for an extension of time is **DENIED**.

## STATEMENT

The following facts are undisputed unless otherwise indicated.

On February 13, 2010, Plaintiff was housed in Facility C, Building 1, cell number 108 at SVSP.  Facility C is a Level IV maximum-security housing unit.  (Krenke Decl. ¶ 2.)  Inmates housed in this unit require the highest level of security at SVSP.  (*Id.*)  Plaintiff is a former gang member, and has a history of disruptive behavior, including serious rules violations for battery and fighting.  (Pl.'s Opp. Undisputed Fact 10; Voth Decl., Ex. A, Plaintiff's Dep. 20, 26-27.)

At approximately 3:45 p.m. on February 13, 2010, Sgt. Meza was informed that Plaintiff possibly concealed contraband on his person during a visitation earlier that day because a review of the visitation video tape showed Plaintiff placing his hands inside his pants near his crotch area as if removing or placing an unknown object or contraband inside.  (Meza Decl. ¶ 2.)  Sgt. Meza contacted Facility C, Building 1 floor staff via telephone and instructed them to conduct a search of cell number 108, which was occupied by Plaintiff and inmate Idlett.  (*Id.*)  Sgt. Meza went to Facility C, Building 1 to supervise the search.  (*Id.* ¶ 3.)  She arrived at approximately 3:53 p.m.  (*Id.*)  Upon arrival, she gave orders to Plaintiff and Idlett to submit to handcuffs.  (*Id.*)       What occurred next is in dispute:

According to Defendants, the following events took place.  While Sgt. Meza was ordering Plaintiff to submit to handcuffs, Plaintiff made a quick motion to the toilet and flushed an unknown object down.  (*Id.*)  Plaintiff continued to ignore Sgt. Meza's orders and ran to the bottom bunk, sat down and began eating what appeared to be a green leafy substance.  (*Id.* ¶ 4.)  Sgt. Meza instructed Control Booth Officer R. Ambriz to activate the alarm.  (*Id.*)  Inmate Idlett was standing at the cell door blocking Sgt. Meza's view into the cell.  (*Id.*)

2

Officer Murphy then sprayed one cannister of MK-9 O.C. pepper spray into the cell. (*Id.* ¶ 5.) Plaintiff continued to eat the green leafy substance. (*Id.*) Officer Murphy ordered both inmates to "get down" several times, without success. (*Id.*) Officer Murphy then sprayed a second canister of MK-9 O.C. pepper spray into the cell. (*Id.*)

Officer Murphy was relieved by Officer Logan who ordered both inmates to "get down" several times. (*Id.* ¶ 6.) When Plaintiff and inmate Idlett did not comply, Officer Logan sprayed his cannister of MK-9 O.C. pepper spray into the cell. (*Id.*; Logan Decl. ¶ 6.) Plaintiff and inmate Idlett continued to ignore these orders and Plaintiff continued to consume the green leafy substance. (Meza Decl. ¶ 6.)

Then Officer Perez approached the cell and gave both inmates orders to "get down." (*Id.* ¶ 7.) When they did not comply, Officer Perez sprayed his MK-9 O.C. pepper spray into the cell. (*Id.*; Perez Decl. ¶ 4.) This time, both inmates appeared to be overcome by the effects of the pepper spray and backed up to the food port to allow themselves to be handcuffed. (Meza Decl. ¶ 7.) Officer A. Vasquez put handcuffs on both inmates. (*Id.*; Vasquez Decl. ¶ 4.)

Sgt. Meza instructed Officers Morring and Tschabold to remove inmate Idlett from the cell and escort him to the Health Annex for medical evaluation and decontamination. (Meza Decl. ¶ 8.) Sgt. Meza instructed Officers Murphy and J. Vasquez to remove Plaintiff from the cell and escort him to the Health Annex. (*Id.*) When Officers Murphy and J. Vasquez attempted to escort Plaintiff, he began cursing and twisting and jerking his body from side-to-side in an attempt to break away from the escort. (*Id.*; Murphy Decl. ¶ 7; J. Vasquez Decl. ¶¶ 3-4.) Officer Murphy ordered Plaintiff to stop resisting, but Plaintiff did not heed this instruction. (Murphy Decl. ¶ 7.) Officer Murphy was holding Plaintiff's left arm and Officer J. Vasquez was holding his right arm; utilizing their body weight, the officers forced Plaintiff to the ground a few feet from his cell. (*Id.*) Sgt. Meza was standing a few feet away when she saw Officers Murphy and J. Vasquez use force to bring Plaintiff to the ground to gain control. (Meza Decl. ¶ 8; Murphy Decl. ¶ 7; J. Vasquez Decl. ¶¶ 3-4.) Once on the ground, Plaintiff stopped resisting. (Meza Decl. ¶ 8; Murphy Decl. ¶ 8.) Plaintiff was then assisted to his feet

3

1  and escorted to the Health Annex for medical evaluation and decontamination prior to being
2  placed in a holding cell. (*Id.*) After inmate Idlett was secured in a holding cell, Officer
3  Tschabold noticed Plaintiff was on the ground in his holding cell and appeared unresponsive.
4  (Tschabold Decl. ¶ 6.) A medical emergency was called and Officer Tschabold carried Plaintiff
5  outside for fresh air and further medical evaluation. (*Id.*; Meza Decl. ¶ 9.)

6  As soon as Plaintiff and inmate Idlett were removed from the cell, Officer Logan entered
7  to secure the scene and preserve evidence. (Logan Decl. ¶ 8.) Marijuana was recovered from
8  the cell, on top of the bunk belonging to inmate Idlett. (Voth Decl., Ex. A at 31-32.) Plaintiff
9  was blinded by the effects of the pepper spray and could not identify any of the officers or see
10 their positions as he was being taken out of the cell. (Voth Decl., Ex. A at 41, 51, 53).

11 By contrast, according to Plaintiff, the following events occurred on February 13, 2010:

12 Plaintiff was listening to music on his headphones with his back to the cell door and,
13 thus, was unaware that officers were at his cell door and were telling him to cuff up. (Harrison
14 Decl. at 1.) Plaintiff became aware of the officers when they opened the tray slot and began
15 spraying numerous cans of pepper spray into his cell. (*Id.*) Both Plaintiff and his cellmate were
16 completely doused with the pepper spray and were unable to see or breathe. *(Id.)* Plaintiff
17 declares, "Once we were cuffed up and escorted out of the cell apx. 3-5 feet from my cell door I
18 felt myself being lifted into the air then heard Officer Murphy say 'you like eating weed. Then
19 eat this.' At this point I was planted on my face before I realized what was happening. After
20 this I recall little else as I [sic] unconscious went in and out. I woke up on the C facility patio
21 bleeding from my forehead. At no time did I resist officers or struggle, . . . There were no
22 commands to stop resisting, but rather I was slammed on my forehead while restrained in
23 handcuffs." *(Id.)* In his deposition, Plaintiff clarifies that each officer had one hand on one of
24 his arms and with the other hand each officer grabbed one of his legs, then they lifted him in the
25 air and dumped him on his head. Harrison Depo. at 44. When he was on the ground, each
26 officer had one knee in his back. *Id.* When Plaintiff was given a drug test, he passed. (*Id.* at 3.)
27 After the incident, a medical examination revealed that Plaintiff had a 15 mm abrasion on his
28

4

forehead. *(Id.)*

The following facts regarding Plaintiff's disciplinary hearing are undisputed. As a result of the February 13, 2010 incident, Plaintiff was charged with a serious rule violation for willfully resisting a peace officer in the performance of his duty. (Sherman Decl. ¶¶ 4-6.) A disciplinary hearing was held on March 6, 2010 where Plaintiff plead not guilty. (*Id.* at ¶ 4.) Lieutenant E. Sherman, the senior hearing officer, states that the evidence that was presented to Plaintiff was based on the February 22, 2010 Rules Violation Report ("RVR") written by Officer Logan, Log No. C10-02-0029, and Incident Report log number SVSP-FC1-10-0096. (*Id.* at ¶ 6, Ex. A, RVR Report).[3] The RVR focused on the events that occurred while Plaintiff was in his cell and failed to comply with the officers' requests to submit to mechanical restraints or to get down and prone out. (*Id.*, Ex. A) The RVR ends with the statement, "Both inmates complied and submitted to mechanical restraints and were escorted out of C-1 Building." (*Id.*) Lt. Sherman states, "Relying on the [RVR] and the incident reports in log number SVSP-FC1-10-02-0096, I found Harrison guilty of willfully resisting a peace officer in the performance of duty." (*Id.* at ¶ 6.) However, Part 6 of the RVR, (*Id.*, Ex. A) indicates that the evidence Lt. Sherman considered was based only on the RVR. Plaintiff lost sixty-one days of behavioral credits as a result of the guilty finding. (*Id.*) Plaintiff's finding of guilt still stands and his behavioral credits have not been restored. (*Id.*)

## ANALYSIS

**I. MOTION FOR EXTENSION OF TIME TO FILE AMENDED COMPLAINT AND OPPOSITION**

Based upon the advice of a fellow inmate who is experienced in the law, Plaintiff moves for an extension of sixty days in which to file an amended complaint and in which to file a new opposition to Defendants' summary judgment motions. Plaintiff states that he wants to file an amended complaint to add state law claims such as battery and assault that arise from the same facts as his claims for excessive force and he wants to file a new opposition because his fellow

---

[3] Defendants submit as evidence a copy of the RVR, but do not submit a copy of Incident Report log number SVSP-FC1-10-02-0096.

inmate has advised him that his previous oppositions are not in compliance with the *Rand* notice.

Federal Rule of Civil Procedure 15(a) provides that leave to amend "shall be freely given when justice so requires." In considering whether to grant or deny a motion seeking leave to amend a complaint, the district court may consider whether there is bad faith, undue delay, prejudice to the opposing party, futility in the amendment, and whether the plaintiff has previously amended his complaint. *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990).

Plaintiff has not shown that justice requires that he be permitted to amend his pleading. Although Plaintiff may be making this motion in good faith, as he states in his declaration, he does not explain undue delay or address prejudice to the opposing parties. This case was filed on February 27, 2012, approximately twenty months ago, against many Defendants who have filed two motions for summary judgment and replies to Plaintiff's oppositions. To allow Plaintiff to amend his complaint to add new claims at this late date would cause prejudice to Defendants who, before the new claims against them could be resolved, would have to wait sixty days for Plaintiff to file an amended complaint and then would have to file another round of dispositive motions. Permitting Plaintiff to add new claims at this late stage in the proceedings would cause undue prejudice to Defendants and create undue delay of the resolution of this case. *See Janicki Logging Co. v. Mateer*, 42 F.3d 561, 566 (9th Cir. 1994); *Parker v. Joe Lujan Enters., Inc.*, 848 F.2d 118, 121 (9th Cir. 1988) (finding undue delay where motion to amend was filed approximately eleven months after original complaint). Therefore, Plaintiff's motion for an extension of time to file an amended complaint is DENIED.

Plaintiff's argument to file a new opposition is much the same as his argument for the motion to amend. He states that because his fellow inmate has informed him that his previous oppositions and discovery are not in compliance with the *Rand* notice, he wants to present a sound opposition with declarations from fellow inmates who were either witnesses or victims of excessive force. However, reliance on a jailhouse lawyer does not establish good cause for

6

relitigating fully-briefed motions for summary judgment. *See Hughes v. Idaho State Bd. of Corrections*, 800 F.2d 905, 909 (9th Cir. 1986) (illiterate inmate's reliance on jailhouse lawyer insufficient to excuse procedural default of a post-conviction petition). Plaintiff also states, without any evidentiary support, that granting his motion for sixty additional days to file a third opposition presents "no danger of prejudice to the opposing party and will cause no judicial impact upon the proceedings." Contrary to this self-serving statement, another opposition with new declarations from unknown individuals at this late date in the proceeding, when there are two fully-briefed summary judgment motions before the Court, will likely cause Defendants undue prejudice and will have a substantial impact on these judicial proceedings. For these reasons, Plaintiff's motion for additional time to file a third opposition is DENIED.

## II. MOTIONS FOR SUMMARY JUDGMENT

### A. STANDARD OF REVIEW

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986). When the moving party has met this burden of production, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. If the nonmoving party fails to produce enough evidence to show a genuine issue of material fact, the moving party wins. *Id.*

///
///

### B.     BAR UNDER *HECK V. HUMPHREY*, 512 U.S. 477 (1994)

Defendants argue that Plaintiff's excessive force claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). Plaintiff does not respond to this argument.

#### 1. Legal Standard

In order to recover damages for an allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a 42 U.S.C. § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. *Id.* at 486-487. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. *Id.* at 487. When a state prisoner seeks damages in a § 1983 suit, the district court must therefore consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. *Id.* at 487. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed. *Id.* at 487 & n.8.

*Heck* bars a claim of unconstitutional deprivation of time credits because such a claim necessarily calls into question the lawfulness of the plaintiff's continuing confinement, i.e., it implicates the duration of the plaintiff's sentence. *Sheldon v. Hundley*, 83 F.3d 231, 233 (8th Cir. 1996). Under the same reasoning, *Heck* bars a claim for using the wrong procedures in a disciplinary hearing that has resulted in the deprivation of time credits if the nature of the challenge to the procedures necessarily implies the invalidity of the judgment. *Edwards v. Balisok*, 520 U.S. 641, 645 (1997).

The Ninth Circuit has recently held that *Heck* bars a claim of excessive force where the excessive force is based on the same actions during a continuous transaction as the plaintiff's

1  conviction for resisting arrest.  *Hooper v. County of San Diego*, 629 F.3d 1127, 1134 (9th Cir.
2  2011); *Smith v. City of Hemet*, 394 F.3d 689, 696 (9th Cir. 2005) (en banc).  This is because a
3  conviction for resisting arrest may be obtained under California law only if the officers do not
4  use excessive force in the course of making that arrest.  *Id.*

**2. Analysis**

Here, Lt. Sherman's determination that Plaintiff resisted peace officers in the performance of their duty when he failed to follow the officers' orders to cuff-up or prone-out necessarily includes a finding that the officers were engaged in the performance of their duties during that incident.  Accordingly, the finding also, by necessity, means that the officers did not engage in excessive force by releasing pepper spray into his cell.

However, the same does not hold true for Plaintiff's claim that Officers Murphy and J. Vasquez used excessive physical force after he was in handcuffs because Lt. Sherman's finding of guilt was not based on this separate incident.   Although Lt. Sherman states in his declaration that his finding of guilt was based on both incidents, the documentary evidence does not support this.  First, only the RVR report was submitted as evidence, the incident report documenting the excessive physical force incident was not.  Second, the last page attached to the RVR report indicates that Lt. Sherman based his determination of guilt solely on the incident that occurred in Plaintiff's cell before he was hand-cuffed.  *See* Sherman Decl., Ex. A, page 6 (listing Lt. Sherman's "findings" based on RVR report of the in-cell events and Sgt. Meza's CDCR 367-C, also based on the in-cell events).  Third, the report of the investigative employee assigned to investigate the RVR focused only on the incident in the cell, before Plaintiff was hand-cuffed. *See*, Opp., Ex. C, RVR Part C, Investigative Report of A. Rugama.  This evidence shows that, at the disciplinary hearing, the evidence presented was based on the events that took place in Plaintiff's cell, not after he was cuffed up and being escorted out of his cell.  Thus, Lt. Sherman's finding that Plaintiff was guilty of willfully resisting a peace officer was based only on the events that took place in Plaintiff's cell, not after he had been cuffed up and was being escorted away.

9

Because Lt. Sherman's finding that the charge against Plaintiff of resisting a peace officer rested solely on the in-cell events, success on Plaintiff's excessive physical force claim based on the events that occurred after he was taken out of his cell would not imply that his serious rule violation is invalid.

Citing *Beets v. County of Los Angeles*, 669 F.3d 1038, 1040 (9th Cir. 2012), Defendants argue that Plaintiff's second excessive force claim is barred by *Heck* because "the factual record of his disciplinary proceedings establishes that the Defendants' use of force was within the temporal scope of Harrison's misconduct." *See* Opp. at 9. In *Beets*, the factual basis of the conviction that precluded a subsequent Section 1983 claim pursuant to *Heck* involved a series of criminal acts. *Id.* The criminal acts consisted of the following: two accomplices fled from police; they resisted arrest while getting into a truck; they rammed a police car with the truck; and then they backed the truck towards one of the officers. *Id.* In response, the officer shot and killed the driver. *Id.* A jury convicted the driver's accomplice of, among other crimes, assault with a deadly weapon upon a peace officer. *Id.* The driver's parents brought a Section 1983 action against the peace officer, claiming that he used excessive force by shooting the driver. *Id.* at 1141. They attempted to avoid the *Heck* bar by showing that the truck was not moving when the officer shot and killed the driver and, therefore, success on the Section 1983 claim would not impugn the accomplice's assault conviction. *Id.* at 1043. However, the court concluded that it was not reasonable to separate the officer's actions from the decedent's criminal activities because, under the circumstances, it was not relevant whether the truck was moving when the officer fired. *Id.* at 1043. The court reasoned that, where a defendant is charged with a single-act offense, but there are multiple acts involved, each of which could serve as the basis of conviction, a jury does not determine which specific act forms the basis for the conviction, thus, "the jury's verdict necessarily determines the lawfulness of the officers' actions throughout the course of the defendant's conduct, and any action alleging the use of excessive force would 'necessarily imply the invalidity of his conviction.'" *Id.* at 1045 (citation omitted).

///

Unlike in *Beets*, Plaintiff asserts two claims based on two distinguishable incidents. The first incident focused on the events in Plaintiff's cell when he ignored the officers' orders to prone out and cuff up. As a result, Officers Murphy, Logan and Perez released cans of pepper spray into the cell. The undisputed facts show that, as a result of being subjected to four cans of pepper spray, Plaintiff had trouble breathing and could not see. He then allowed Officer A. Vasquez to handcuff him.

The second incident involved Officer Murphy and Officer J. Vasquez, who were ordered by Sgt. Meza to remove Plaintiff from his cell and escort him to the Health Annex. When Officers Murphy and J. Vasquez attempted to escort Plaintiff, they applied force to subdue him because they felt that he was twisting and jerking his body. This incident, although occurring very soon after the pepper-spray incident, was distinguishable from it. First, at the time of the second incident, Plaintiff was in hand-cuffs and was experiencing trouble breathing and temporary loss of sight as a result of being subjected to the pepper spray. Therefore, he was not in the same physical condition and did not represent the same kind of threat as in the first incident. Second, the evidence at the RVR hearing itself shows that the incidents were separate. The last sentence of the RVR report states, "Both inmates complied and submitted to mechanical restraints and were taken out of C-1 Building." The fact that the RVR report does not include the second incident shows that Officer Logan, the author of the RVR report, thought the incident was complete when the inmates were escorted away. Third, the investigation of the RVR report also only focused on events in the cell, not what occurred after Plaintiff was being escorted away. Fourth, as stated above, Lt. Sherman, the finder of fact at Plaintiff's rules violation hearing, did not include the second incident in his findings of fact that formed the basis of his determination that Plaintiff was guilty of resisting peace officers.

Therefore, Plaintiff's excessive force and failure to intervene claims based on the events that occurred while he was in his cell is barred by *Heck* until his rules violation for obstructing and resisting officers is overturned. The second excessive force claim based on events that

11

occurred after he was escorted out of his cell is not barred by *Heck* and will proceed on the merits.

### C. Merits of Second Excessive Force Claim

In order to state a claim for the use of excessive force in violation of the Eighth Amendment, a plaintiff must allege facts that, if proven, would establish that prison officials applied force "maliciously and sadistically to cause harm," rather than in a good-faith effort to maintain or restore discipline. *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). Not every malevolent touch by a prison guard gives rise to a federal cause of action; the Eighth Amendment's prohibition of cruel and unusual punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force. *Id.* at 9-10. Guards may use force only in proportion to the need for it in each situation. *Spain v. Procunier*, 600 F.2d 189, 195 (9th Cir. 1979).

In determining whether the use of force was for the purpose of maintaining or restoring discipline or, rather, for the malicious and sadistic purpose of causing harm, a court may evaluate the need for the application of force, the relationship between that need and the amount of force used, the extent of any injury inflicted, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. *Hudson*, 503 U.S. at 7. Courts must accord prison administrators wide-ranging deference in the adoption and execution of policies and practices to further institutional order and security. *Bell v. Wolfish*, 441 U.S. 520, 547 (1979); *Jeffers v. Gomez*, 267 F.3d 895, 917 (9th Cir. 2001).

As discussed above, the parties' versions of events that occurred immediately after Plaintiff was placed in handcuffs and escorted out of his cell are disputed. At summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party; if evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence set forth by the nonmoving party. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999).

Based on the evidence submitted, Plaintiff has raised a triable issue as to whether

12

Officers Murphy and J. Vasquez used excessive physical force.  Plaintiff states that when Officers Murphy and J. Vasquez were escorting him out of his cell, he immediately "felt himself being lifted up into the air then heard Officer Murphy say 'You like eating weed . . . then eat this.'"  Plaintiff states, "I was planted on my face before I realized what was happening."  Each officer had one hand on one of Plaintiff's arms and, with the other hand, each officer grabbed one of Plaintiff's legs, then they lifted him in the air and dumped him on his head.  Harrison Dep. at 44.  When he was on the ground, each officer had one knee in his back.  *Id.*  After this, he recalled little else because he went in and of consciousness and woke up on the C Facility patio bleeding from his forehead.  He declares, "At no time did I resist officers or struggle. . . . There were no commands to stop resisting, but rather I was slammed on my forehead while restrained in handcuffs."  Harrison Decl. at 1.   Defendants do not dispute that Plaintiff was in handcuffs and could hardly breathe or see when this incident occurred.  They also do not dispute that Plaintiff became unconscious some time after physical force was applied and that he suffered from a 15 mm abrasion on this forehead.

This evidence, when taken to be true, is sufficient to raise a triable issue whether Officers Murphy and J. Vasquez had sufficient cause to bring Plaintiff to the ground with such force that he suffered from a 15 mm laceration and which may have caused him to become unconscious.  Given that Plaintiff was in handcuffs and was in a debilitated condition from the pepper spray, he hardly posed a threat such that, even if he was twisting his body, it would be necessary for the officers to have lifted him up and taken him to the ground with such force.

Accordingly, because Plaintiff has raised a triable issue of material fact whether Officers Murphy and J. Vasquez used excessive force against him, their motion for summary judgment on the merits of this claim is DENIED.

### D.  CLAIM RE FAILURE TO INTERVENE

Based on the second excessive physical force incident, Plaintiff brings a claim against Officers Ambriz, A. Vasquez, Perez, Logan and Sgt. Meza who allegedly observed this exercise of excessive of force and failed to intervene.

13

In order to state an excessive force claim against correctional officer-bystanders, a plaintiff must allege circumstances demonstrating that these officers had an opportunity to intervene and prevent or curtail the violation, but failed to do so. *Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1995). In other words, the plaintiff must show that the defendant-bystanders had enough time to observe what was happening and to intervene to stop it. *Id.*

Except for Sgt. Meza, all Defendants named in this claim declare that they did not see officers use force to bring Plaintiff to the ground. Officers Perez and A. Vasquez were focused on securing inmate Idlett and did not see officers escort Plaintiff out of the cell. *See* Perez Decl. at ¶ 5; A. Vasquez Decl. at ¶ 5. Officer Ambriz was focused on monitoring the cell doors and building status so that he did not observe the escort of the inmates or observe staff use physical force to subdue Plaintiff. *See* Ambriz Decl. at ¶ 5. Officer Logan immediately entered the cell after the inmates were removed to secure the crime scene and preserve evidence and, thus, he did not observe the escort of either inmate after they were removed from the cell. *See* Logan Decl. at ¶ 8.

By all accounts, this incident happened very quickly, so there would not have been time or space for any of the bystander defendants to intervene. Even Sgt. Meza, who saw the incident and was standing nearby, would not have had time to intervene because the incident was over in a matter of seconds.

Plaintiff cannot dispute that the bystander officers could have intervened because, by his own admission, at that time he could not see due to the effects of the pepper spray. *See* Harrison Dep. at 36, 41. Plaintiff argues that he did not have to see Officer Ambriz to know that he could have intervened because Officer Ambriz's position in the control tower provided him with a good view of the area where the incident took place. Harrison Decl. at 2. However, even if Officer Ambriz did see the incident from the tower, he had no opportunity to intervene because he was far away from where the incident occurred and because it happened so quickly. Plaintiff also attempts to dispute Officer Logan's testimony because Officer Logan was in the cell, only a few feet away from where the incident occurred. However, like Sgt. Meza, even if

14

Officer Logan saw the incident, there would have been no time for him to have intervened.

Therefore, Plaintiff has failed to raise a triable issue of material fact regarding whether the bystander officers had enough time to observe what was happening and to intervene to stop it. Therefore, summary judgment on this claim is GRANTED in Defendants' favor.

### E.  SUPERVISORY LIABILITY

Plaintiff argues that Sgt. Mesa is liable as a supervisor for the officers' actions because she was the sergeant of all the officers at the scene and she and her officers practice standard training exercises each week.

Respondeat superior is not a proper basis for liability under Section 1983. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Therefore, a supervisor may be liable under Section 1983 only upon a showing of (1) personal involvement in the constitutional deprivation or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc) (citation omitted). An individual supervisory defendant can be liable for his or her failure to train subordinates when, "in light of the duties assigned to specific officers or employees, the need for more or different training is obvious, and the inadequacy so likely to result in violations of constitutional rights, that the [supervisor] . . . can reasonably be said to have been deliberately indifferent to the need." *Clement v. Gomez*, 298 F.3d 898, 905 (9th Cir. 2002) (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)). "That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability . . . for the officer's shortcomings may have resulted from factors other than a faulty training program." *City of Canton*, 489 U.S. at 390. For instance, adequately trained officers may occasionally make mistakes. *Id. F*or liability to attach, the plaintiff must prove that the deficiency in training caused the officers' constitutional violations. *Id.* at 391.

Because there is no respondent superior liability in Section 1983 claims, Plaintiff's statement that Sgt. Meza was responsible for the actions of Officers Murphy and J. Vasquez is insufficient to raise a triable issue regarding her liability for their infliction of excessive force

15

on Plaintiff. Likewise, Plaintiff's brief statement that Sgt. Meza conducted a weekly training program for her officers is insufficient to raise a triable issue of material fact that her training was inadequate and, even if it was inadequate, that it was the cause of the excessive force inflicted on Plaintiff. That potentially one instance of excessive force exists does not establish the inadequacy of Sgt. Meza's training program. Further, even if the training was inadequate, the actions of Officers Murphy and J. Vasquez may have resulted from a mistake or on factors other than the training program.

Accordingly, summary judgment on the supervisory liability claim is GRANTED in favor of Sgt. Meza.

### F.    QUALIFIED IMMUNITY

Defendants claim that summary judgment is also proper in this case because they are entitled to qualified immunity from liability for civil damages. The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The threshold question in qualified immunity analysis is: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such right was "clearly established." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (overruling the sequence of the two-part test that required determination of a deprivation first and then whether such right was clearly established, as had been required by *Saucier*, and holding that a court may exercise its discretion in deciding which prong to address first, in light of the particular circumstances of each case). The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that her or his conduct was unlawful in the situation she or he confronted. *Saucier*, 533 U.S. at 201-202.

16

///

Here, the only claim in which the Court has found that Defendants' actions rose to the level of a constitutional violation is the excessive force claim against Officers Murphy and J. Vasquez. Thus, the Court only considers qualified immunity in connection to this claim.

Thus, the next prong in the analysis as to that claim is whether it would be clear to a reasonable officer that the following conduct was unlawful: i.e. when escorting an inmate who was in handcuffs and who could not see and had difficulty breathing due to the effects of pepper spray, is it lawful to lift the inmate up by his arms and legs and put him down on the ground head first with such force that the inmate suffered from a large abrasion on his forehead and became unconscious. *Saucier*, 533 U.S. at 202. The Court is not persuaded that a reasonable officer would expect such force to be lawful. Therefore, summary judgment on this claim on the basis of qualified immunity is DENIED.

### III. FURTHER PROCEEDINGS

Having denied in part, Defendants' motions for summary judgment, the claim of excessive force against Officers Murphy and J. Vasquez is referred to Magistrate Judge Nandor Vadas pursuant to the Pro Se Prisoner Mediation Program.[4] Judge Vadas shall conduct settlement proceedings and file a report thereafter. The proceedings are confidential and no statement made therein will be admissible in any proceedings in the case, unless the parties otherwise agree. In view of the referral, further proceedings on the excessive force claim against Officers Murphy and J. Vasquez are stayed.[5] If the claim is not settled, the Court will enter a new scheduling order for further proceedings.

///

---

[4] The summary judgment motion at Docket No. 39 addresses the excessive force claim against Officer Murphy; the summary judgment motion at Docket No. 56 addresses the excessive force claim against Officer J. Vasquez.

[5] The deliberate indifference claim against Nurses O'Kelly and Rodriguez has not yet been briefed. The briefing on this claim will proceed in accordance with the previously issued briefing schedule.

17

///

## CONCLUSION

Based on the foregoing, the Court orders as follows:

1. Defendants' motions for summary judgment (Docket Nos. 39 and 56) are GRANTED, IN PART, AND DENIED, IN PART. Summary judgment is granted in favor of all Defendants on all claims with the exception of the excessive force claim against Officers Murphy and J. Vasquez.

2. Plaintiff's motion for an extension of time to file an amended complaint and a third opposition is DENIED. (Docket No. 77.)

3. This case is referred to Magistrate Judge Nandor Vadas pursuant to the Pro Se Prisoner Mediation Program. Judge Vadas shall conduct settlement proceedings and file a report thereafter. In view of this referral, further proceedings on the excessive force claim against Officers Murphy and J. Vasquez are STAYED. The clerk shall mail a copy of this order to Magistrate Judge Vadas in Eureka, California.

4. This Order terminates Docket Nos. 39, 56 and 77.

**IT IS SO ORDERED.**

Dated: January 6, 2014.

YVONNE GONZALEZ ROGERS
UNITED STATES DISTRICT JUDGE

G:\PRO-SE\YGR\CR.12\Harrison12-963SJGrant in part.rmh.wpd